UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CEDRIC R. JOYCE,

                Plaintiff,

v.

UNKNOWN SPRANGO et al.,

                Defendants.

_____/

Case No. 1:25-cv-900

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court has granted Plaintiff leave to proceed *in forma pauperis*.

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendants Martino and Stallman. The Court will direct the Clerk to sever Plaintiff's claims against Defendants Martino and Stallman into two new and separate actions.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these

standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will also deny Plaintiff's motion to appoint counsel.

**Discussion**

## I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan, the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan, and the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. Plaintiff sues the following RMI staff: Correctional Officer Unknown Sprango, Registered Nurse Marcia K. Duma, Registered Nurse Sherri Gregurek, Doctor Paul Troost, Registered Nurse Heidi Slusher, Registered Nurse Jill M. Miller, Prisoner Counselor Unknown Frias, Correctional Officer Unknown Nelson, Correctional Officer Unknown Evers, Correctional Officer Unknown Lopez, Registered Nurse Dustin Waber, and Registered Nurse Morgan Porta. (Compl., ECF No. 1, PageID.4–6.) Plaintiff also sues MRF Nurse Practitioner Juiliana Martino and URF Doctor Timothy Stallman. (*Id.*, PageID.5–6.)

Plaintiff suffers from "chronic illness" that requires the use of a diabetic glucose monitor and asthma inhalers. (*Id.*, PageID.8.) He is also totally blind in his left eye and has only partial sight in his right eye. (*Id.*, PageID.9.)

Plaintiff alleges that he was transferred from MRF to RMI on or about August 16, 2022. (*Id.*, PageID.8.) Once there, Plaintiff was searched and taken to the control center, where he showed non-party officers "what [he] had" regarding his health conditions. (*Id.*) Plaintiff was then taken to the health services clinic where he was seen by Defendant Duma. (*Id.*, PageID.8–9) Plaintiff showed Defendant Duma his prior medical details and prescription materials and told her

2

Case 1:25-cv-01209-RJJ-PJG    ECF No. 5,  PageID.251    Filed 10/07/25    Page 3 of 25

about his "housing restrictions" and "sight issues." (*Id.*, PageID.9.) Defendant Duma took

Plaintiff's vitals, checked his inhaler and glucose levels, and administered insulin. (*Id.*) Defendant

Duma also told Plaintiff that his cell was located on the fourth floor. (*Id.*) When Plaintiff

complained that he has "a serious seizure problem and other medical issues" and is unable to "lock

up those many floors and/or tiers from the ground floor," Defendant Duma stated, "Details issued

by another prisoner don't mean s___." (*Id.*) (alteration in original). Plaintiff asked to speak with a

sergeant, but Defendant Duma refused. (*Id.*) Defendant Duma issued a "modified diet request" for

a diabetic snack bag (ECF No. 1-1, PageID.63)[1] and gave Plaintiff two appointment cards, and

Plaintiff left the visit. (Compl., ECF No. 1, PageID.9.) Plaintiff was required to walk through

several hallways and up four flights of stairs to reach his cell. (*Id.*, PageID.9–10.)

That same day, Plaintiff attempted to speak with Defendant Frias about the location of his

cell but was told that Defendant Frias was unavailable. (*Id.*, PageID.10.) During the next two days,

Plaintiff asked "the nurses" about his housing detail. (*Id.*) Plaintiff also sent kites to Defendant

---

[1] The Court may consider documents that are attached to a *pro se* complaint when considering
whether the complaint states a claim upon which relief should be granted. *See, e.g., Hogan v.
Lucas*, No. 20-4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause
the documents attached to [plaintiff]'s complaint are referenced in the complaint and 'central to
the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage"
(citations omitted)); *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the
Eastern District of Michigan District Court's consideration of the attachments to the plaintiff's
complaint to determine that the plaintiff had received medical treatment and, therefore, failed to
state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th
Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations
and the documents attached to the complaint to support the determination that the plaintiff failed
to state a claim). The Court will generally accept as true the statements that Plaintiff makes in the
documents he has attached to the complaint. The Court will generally not accept as true statements
made by others in the documents that Plaintiff attaches to the complaint, except to the extent that
Plaintiff relies on the truth of those statements in his complaint. "When a document attached to the
complaint contradicts the allegations, the document trumps the allegations . . . [if the] document
. . . 'utterly discredit[s]' the allegations." *In re Flint Water Cases*, 960 F.3d 303, 329 (6th Cir.
2020).

Frias. (*Id.*, PageID.12.) When Plaintiff spoke with Defendant Frias and showed Defendant Frias his medical details, Defendant Frias told Plaintiff that he would "look into that." (*Id.*) The medical records attached to Plaintiff's complaint indicate that Defendant Miller spoke with Defendant Frias regarding Plaintiff's medical detail from 2014, which did not indicate a stair restriction, and that Plaintiff was scheduled for an appointment the following week. (ECF No. 1-1, PageID.52.)

While at RMI, Plaintiff attended four medical callouts every day. (Compl., ECF No. 1, PageID.10.) During these callouts, Plaintiff showed Defendants Duma, Miller, Waber, Crawford, Porta, and Slusher MDOC policies "regarding the issues." (*Id.*, PageID.11.) Each time, they became "angered." (*Id.*) "A couple of times custody officers were called and [Plaintiff] was given direct orders to leave and go back to [his] cell or get thrown in the hole" and that his property could "get lost." (*Id.*) "[A]t one point," Defendants Duma, Waber, Porta, and Slusher told Plaintiff that Defendant Martino, Plaintiff's prior medical provider at MRF, had removed Plaintiff's medical details, including the medical detail for diabetic shoes. (*Id.*) Plaintiff notes that he does not believe that Defendant Stallman, a prior medical provider while Plaintiff was housed at URF, cancelled his medical details or housing accommodation. (*Id.*, PageID.15.)

Plaintiff was scheduled for a visit with Defendant Troost on August 22, 2022, to discuss his request for diabetic shoes but did not appear for the appointment. (ECF No. 1-1, PageID.51.) Plaintiff alleges that, on August 22, 2022, Defendants Nelson, Evers, and Lopez refused to allow Plaintiff to attend his medical callout. (Compl., ECF No. 1, PageID.13.)

On August 24, 2022, Plaintiff was seen by "R.N.s" who refused to examine him or discuss housing accommodations. (*Id.*) Plaintiff explained that he had housing details at his previous correctional facilities, including handicapped elevator access or only one flight of stairs at URF, and housing on a handicapped floor at MRF. (*Id.*) During his August 24, 2022, healthcare

appointment, Defendant Waber noted that Plaintiff had housing restrictions at a prior facility and referred Plaintiff for a visit with the nurse practitioner on September 19, 2022, to discuss his housing restrictions and request for diabetic shoes. (ECF No. 1-1, PageID.49.)

On August 28, 2022, Plaintiff collapsed or "slipped" while walking up the stairs and hit his back, side, and head. (Compl., ECF No. 1, PageID.12; ECF No. 1-1, PageID.25.) Other prisoners helped Plaintiff to the fourth floor. (Compl., ECF No. 1, PageID.12.) Defendant Sprango then told the prisoners who had helped Plaintiff to lock down and told Plaintiff that he would not be calling for medical assistance, but that Plaintiff could speak with a healthcare provider when Plaintiff went to "pill line." (*Id.*) Defendant Sprango made comments Plaintiff found "racially degrading and offensive." (*Id.*)

Plaintiff experienced bruising and soreness because of his fall. (*Id.*) When Plaintiff spoke with Defendant Slusher[2] while getting his insulin, Defendant Slusher told Plaintiff that she would not treat his injuries. (*Id.*) Plaintiff submitted a kite, requesting to be seen for his injuries. (*Id.*)

On August 30, 2022, Plaintiff told Defendant Evers that he was not let out for a callout. (Compl., ECF No. 1, PageID.13; ECF No. 1-1, PageID.87.) Defendant Nelson told Plaintiff that the callout "was a misprint." (ECF No. 1-1, PageID.87.)

On September 19, 2022, Defendant Troost saw Plaintiff. (Compl., ECF No. 1, PageID.14.) Plaintiff explained his pain and "the events that took place." (*Id.*) Defendant Troost issued Plaintiff a housing accommodation for a bottom bunk and steps up to one full flight but refused to examine Plaintiff's injuries. (*Id.*; ECF No. 1-1, PageID.104.) Plaintiff was then moved to the ground floor. (Compl, ECF No. 1, PageID.14.) Though Plaintiff continued to send grievances and kites to

---

[2] Plaintiff refers to this individual as "R.N. Heidi Flusher" (*Id.*, PageID.12.). Viewing Plaintiff's allegation in context, it appears that Plaintiff intended to refer to Defendant Slusher.

healthcare concerning his injuries, he did not receive medical treatment for them. (*Id.*) Eventually, Plaintiff was transferred to Bellamy Creek Correctional Facility where he continued to request medical treatment. (*Id.*, PageID.15.)

Plaintiff describes that his cell was also hot, without fans, and the windows remained shut. (Compl., ECF No. 1, PageID.10, 12.) Plaintiff spoke with Defendants Duma, Waber, Slusher regarding his "asthma and breathing problems." (*Id.*) He was told that his "situation was not a priority" and that he would be seen when he was scheduled for a chronic care appointment. (*Id.*, PageID.11.)

Plaintiff also describes that, while at RMI, "they" continuously denied Plaintiff a diabetic snack bag. (*Id.*, PageID.15.) Plaintiff spoke with Defendants Frias and Duma, and other non-parties regarding his need for a snack bag but only received one snack bag while at RMI. (*Id.*) On "several occasions," Plaintiff's blood glucose "dropped below safety levels." (*Id.*, PageID.16.) The low levels affected Plaintiff's sight, feet, hands, legs, liver, and bladder. (*Id.*)

Finally, Plaintiff describes that RMI had a mice and rat infestation. (*Id.*)

Plaintiff brings claims for violation of his Eighth Amendment rights, as well as for violation of state law and MDOC policy. (*Id.*, PageID.7.)[3] He seeks monetary relief. (*Id.*, PageID.18.) He also asks that the Court appoint legal counsel. (*Id.*, PageID.19.)

## II.    Misjoinder

In his complaint, Plaintiff sues Plaintiff sues RMI staff members Sprango, Duma, Gregurek, Troost, Slusher, Miller, Frias, Nelson, Evers, Lopez, Waber, and Porta. He also sues

---

[3] In the complaint, Plaintiff specifically states that he is bringing claims under the Eighth Amendment, state law, and MDOC policy. (Compl., ECF No. 1, PageID.7.) Because Plaintiff specifically identifies the claims that he intends to bring in this suit, the Court does not construe Plaintiff's complaint to raise any other claims.

MRF staff member Martino and URF staff member Stallman. At this stage, the Court must address whether these Defendants and claims are properly joined in a single lawsuit.

### A. Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party.

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied); *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) ("Unrelated claims against different defendants belong in different

suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). A district judge necessarily has considerable discretion in applying Rules 18 and 20. The rules 'operate[ ] independently' because Rule 20 contains limitations that Rule 18 does not, and the Rule 20 inquiry comes first.").

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D

> failed to pay a debt, and E infringed his copyright, all in different transactions—
> should be rejected if filed by a prisoner.

*George*, 507 F.3d at 607; *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006)

(allowing an inmate to assert unrelated claims against new defendants based on actions taken after

the filing of his original complaint would have defeated the purpose of the three strikes provision

of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and

Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions.

Furthermore, he would avoid the consequences of filing at least three actions with all claims

dismissed as meritless, frivolous, or for failure to state a claim. Courts are obligated to reject

misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Plaintiff first describes the August 16, 2024, actions of Defendant Duma.[4] (Compl.,

ECF No. 1, PageID.8–9.) Plaintiff's claims against Defendant Duma are based upon Defendant

Duma's actions in refusing to address the location of Plaintiff's cell and Plaintiff's request for a

ground-flood housing accommodation and her failure to address issues concerning Plaintiff's

receipt of snack bags and the heat within Plaintiff's cell. Plaintiff's claims against RMI Defendants

Sprango, Duma, Gregurek, Troost, Slusher, Miller, Frias, Nelson, Evers, Lopez, Waber, and Porta

all arguably arise out of the same transaction or occurrence as Plaintiff's claims against Defendant

Duma. However, Plaintiff has not alleged any facts that would support an inference that Plaintiff's

claims against Defendants Martino and Stallman concerning Plaintiff's medical details in place at

Plaintiff's prior facilities at dates prior to Plaintiff's arrival at RMI are in any way connected to

---

[4] The analysis of joinder must start somewhere. Plaintiff's factual allegations against Defendant Butler are the first allegations described in Plaintiff's complaint and are alleged to have occurred first in time. By accepting Defendant Butler as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

the incidents at RMI in August and September 2022. These Defendants are in different locations both from the properly joined Defendants and from each other; they examined Plaintiff at different points in time and under different conditions; and their decisions would have resulted in different effects at each earlier facility. Plaintiff has, therefore, improperly joined Defendants Martino and Stallman.

### B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined Defendants Martino and Stallman, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV, Inc.*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV, Inc.*, 467 F.3d at

10

845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV, Inc.*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Here, it appears that Plaintiff's claims against Defendants Martino and Stallman arise out of events that occurred before Plaintiff was incarcerated at RMI during August of 2022. Because Plaintiff's claims against Defendants Martino and Stallman arose at least three years ago, if the Court dismissed those claims, Plaintiff might suffer statute of limitations consequences. Therefore, the Court will not dismiss Plaintiff's claim against Defendants Martino and Stallman but will sever Plaintiff's claim against Defendants Martino and Stallman into two new and separate actions.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Martino and Stallman because they are misjoined. The Court will direct the Clerk to sever Plaintiff's claim against Defendants Martino and Stallman into two new and separate actions.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### C.    Eighth Amendment Medical Care Claims

Plaintiff alleges that Defendants were deliberately indifferent to his medical conditions, in violation of his Eighth Amendment rights. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*,

429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim

for the deprivation of adequate medical care under the Eighth Amendment has an objective and a

subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective

component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In

other words, the inmate must show that he is incarcerated under conditions posing a substantial

risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied

"[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."

*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane

Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the

layman cannot see the medical need, a condition may be obviously medically serious where a

layman, if informed of the true medical situation, would deem the need for medical attention clear.

*See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner

who died from a perforated duodenum exhibited an "objectively serious need for medical

treatment," even though his symptoms appeared to the medical staff at the time to be consistent

with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that

prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize

to be serious," even though the condition was not visually obvious). If the plaintiff's claim,

however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's

affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must

"place verifying medical evidence in the record to establish the detrimental effect of the delay in

medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation

marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

### 1.    Housing Accommodations

Plaintiff alleges that he was not provided with a ground-floor housing accommodation upon his transfer to RMI. First, he alleges that he repeatedly requested a ground floor housing accommodation and told Defendant Duma that he was unable to "lock up those many floors and/or tiers from the ground floor." (Compl., ECF No. 1, PageID.9.) However, Plaintiff does not allege facts that would plausibly suggest that he suffered from an objectively serious medical condition necessitating a ground floor restriction. Indeed, Plaintiff does not provide the Court with any factual basis for his request for a ground-floor restriction prior to his August 28, 2022, fall. And, even after his fall, there are no facts to plausibly suggest that Plaintiff suffered from an objectively serious medical condition requiring a ground floor restriction.

In his health care request submitted shortly after the fall, Plaintiff describes that he collapsed or "slipped while climbing the stairwell." (ECF No. 1-1, PageID.25.) These facts allow

14

the Court to infer that Plaintiff suffered an accidental injury on August 28, 2022; however, the fact that Plaintiff collapsed or slipped on one occasion is insufficient to allow the Court to reasonably infer that that Plaintiff suffers from an objectively serious medical condition impacting Plaintiff's general ability to walk up the stairs. Accordingly, Plaintiff fails to satisfy the objective component necessary to state an Eighth Amendment claim.

Moreover, even if Plaintiff had alleged sufficient facts to suggest an objectively serious medical condition requiring that he be housed on the ground floor, taking Plaintiff's allegations as true, Plaintiff cannot satisfy the subjective component as to the named Defendants. Plaintiff claims that, upon receiving his fourth-floor assignment, he told Defendant Duma that he suffered from a seizure condition and that he believed that he was unable to "lock up those many floors and/or tiers from the ground floor." Yet, Plaintiff fails to provide the Court with any facts that would suggest that Defendant Duma believed that housing Plaintiff on the fourth floor posed a substantial risk of serious harm.

Plaintiff primarily faults Defendants for not following Plaintiff's prior medical details. He also alleges that he showed his prior medical details to Defendant Duma, sent kites to and showed Defendant Frias his medical details, and that he showed Defendants Duma, Miller, Waber, Crawford, Porta, and Slusher MDOC policies "regarding the issues" during his medical callouts. An examination of Plaintiff's earlier medical details does not plausibly suggest that any of the named Defendants would have been aware that Plaintiff suffered from a serious medical condition either before or after his fall that would have prevented him from being able to safely walk up the stairs.

Plaintiff attaches to his complaint a list of special accommodation orders, which includes a 2014 restriction of "ground floor up to 3 steps" and a 2015 "bottom bunk" restriction. (ECF No.

1-1, PageID.133.) However, the most recent medical detail special accommodation attached to Plaintiff's complaint, dated May 13, 2021, indicates only bottom bunk restriction; it does not contain a ground floor restriction. (*Id.*, PageID.117.) The medical records attached to Plaintiff's complaint further indicate that Defendant Miller reviewed the same medical accommodation before speaking with Defendant Frias and explaining that the current accommodations did not include a stair restriction. (*Id.*, PageID.52.)

The factual allegations contained in Plaintiff's complaint and the documents that Plaintiff attached thereto do not allow the Court to infer that Defendants Duma, Miller, Waber, Crawford, Porta, and Slusher were subjectively aware that Plaintiff suffered from a serious medical condition necessitating a ground-floor restriction either before or after Plaintiff's August 28, 2022, fall, or that he faced a substantial risk of serious harm because he was required to walk up the stairs.

Plaintiff also alleges that Plaintiff alleges that Defendants Nelson, Evers, and Lopez refused to allow Plaintiff to attend his medical callout scheduled for August 22, 2022. (Compl., ECF No. 1, PageID.13.) The records attached to Plaintiff's complaint indicate that Plaintiff was scheduled for a visit with Defendant Troost on that date. (ECF No. 1-1, PageID.51.) Though the actions of Defendants Nelson, Evers, and Lopez may have delayed Plaintiff's ability to discuss his medical needs with Defendant Troost, including his request for housing restrictions and diabetic shoes, Plaintiff has not provided the Court with any facts that would suggest that Defendants Nelson, Evers, and Lopez understood the reason for Plaintiff's August 22, 2022, appointment or the extent of Plaintiff's health concerns such that it could be said that their refusal to allow Plaintiff to attend the August 22, 2022, visit evidenced deliberate indifference to a serious medical condition.

Therefore, for each of these reasons, Plaintiff's Eighth Amendment claims premised upon the refusal to provide Plaintiff with a ground-floor housing accommodation prior to September 19, 2022, will be dismissed for failure to state a claim.

### 2.    Denial of Treatment for Injuries

Plaintiff alleges that Defendants Sprango, Slusher, and Troost refused to provide Plaintiff with medical treatment for his back pain and bruising following his August 28, 2022, fall and that Defendants Evers and Nelson prevented Plaintiff from attending an August 30, 2022, medical callout. However, Plaintiff has not alleged facts to plausibly suggest that his injuries rose to the level of an objectively serious medical condition.

Superficial physical conditions, such as minor "cuts, bruising, and swelling," do not rise to the level of serious medical needs requiring medical treatment. *See Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013). Bruising and swelling are conditions that might well resolve on their own. *See, e.g.*, *Larkin v. Schroeder*, No. 2:20-cv-111, 2020 WL 4344985, at *5 (W.D. Mich. July 29, 2020). And while the Sixth Circuit has recognized that "extreme pain due to [a] back condition" can constitute "an objectively serious medical condition," *Murphy v. Grenier*, 406 F. App'x 972, 975 (6th Cir. 2011), courts have also recognized that garden variety back pain, without more, does not constitute a serious medical need. *See Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (holding that the plaintiff's "skin, back, stomach, and other alleged ailments" did not constitute a serious medical need); *Billizone v. Jefferson Parish Corr. Ctr.*, No. 14-1263-SS, 2014 WL 7139636, at *3 (E.D. La. Dec. 15, 2014) (concluding that the plaintiff's back pain caused by disc erosion did not rise to the level of a serious medical need); *Veloz v. New York*, 339 F. Supp. 2d 505, 522–26 (S.D.N.Y. 2004) (finding that the plaintiff's back pain and arthritis did not constitute a serious medical condition). Accordingly, the Court does not doubt that back pain *could* constitute a serious medical condition. However, Plaintiff states only that he experienced "back pain;" he

does not elaborate further. Plaintiff's complaint does not include any facts regarding the strength or character of Plaintiff's pain, whether his back pain interferes with his ability to perform daily activities, or any other facts from which the Court could infer the severity of Plaintiff's medical condition.

Therefore, the Court cannot infer based on the sparse allegations in Plaintiff's complaint that Plaintiff's injuries from his August 28, 2022, fall rise to the level of a sufficiently serious medical condition. The Court will dismiss Plaintiff's Eighth Amendment medical care claim for failure to allege an objectively serious need for medical treatment.

### 3.    Request for Diabetic Shoes

Plaintiff alleges that, upon his transfer to RMI, Plaintiff was not provided with a medical detail for diabetic shoes. However, Plaintiff does not provide the Court with facts that would plausibly suggest that his need for diabetic shoes rose to the level of an objectively serious need for medical treatment.

Even assuming that the shoes typically issued by the MDOC cause Plaintiff to experience discomfort, "[n]ot 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'" *Sarah v. Thompson*, No. 03–2633, 2004 WL 2203585 (6th Cir. Sept. 15, 2004) (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1372 (7th Cir.1997)). A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that the prisoner required immediate medical attention that even a lay person would easily recognize the severity of the situation. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Plaintiff does not describe the effects of shoes he was wearing at RMI from August 16 through October of 2022 or his need for diabetic shoes in sufficient detail to plausibly suggest that Plaintiff suffered from an objectively serious medical condition. Therefore, the Court will dismiss Plaintiff's Eighth Amendment claim premised upon a request for diabetic shoes.

Moreover, even if Plaintiff had alleged facts to suggest an objectively serious medical need for diabetic shoes, Plaintiff describes only that he spoke within Defendants Duma, Waber, Porta, and Slusher regarding his persistent requests. He does not allege facts that would indicate that Defendants Duma, Waber, Porta, and Slusher were aware that Plaintiff was experiencing symptoms that would indicate an objectively serious medical condition requiring diabetic shoes.

Similarly, the facts as alleged by Plaintiff also do not suggest that Defendants Waber and Troost acted with deliberate indifference to Plaintiff's request for diabetic shoes. Upon encountering Plaintiff on August 24, 2022, Defendant Waber was not indifferent to Plaintiff's request, but referred Plaintiff for a visit with the nurse practitioner to discuss Plaintiff's request for diabetic shoes. Plaintiff does not allege that he spoke with Defendant Troost regarding his request for diabetic shoes at that visit or that Defendant Troost was otherwise aware that Plaintiff faced an objectively serious medical need for diabetic shoes at that time.

Accordingly, the Court for each of the foregoing reasons, the Court will also dismiss Plaintiff's claims concerning his requests for diabetic shoes.

### D.    Denial of Snack Bag

Plaintiff faults Defendants Frias and Duma for not ensuring that he received diabetic snack bags. The records attached to Plaintiff's complaint reveal that, on August 16, 2022, Defendant Duma issued a "modified diet request" so that Plaintiff could receive a diabetic snack bag. (ECF No. 1-1, PageID.63) However, Plaintiff received only one snack bag during his stay at RMI. Plaintiff alleges that he spoke with Defendants Frias and Duma, and other non-parties regarding his need for snack bags. He claims that, on "several occasions," Plaintiff's blood glucose "dropped below safety levels," affecting Plaintiff's sight, feet, hands, legs, liver, and bladder. (Compl., ECF No. 1, PageID.16.)

The Court does not question the seriousness of Plaintiff's diabetic condition. However, Plaintiff has not alleged facts that would suggest that Defendants Frias and Duma acted with deliberate indifference to that condition in failing to ensure that Plaintiff received snack bags on unspecified occasions.

To state an Eighth Amendment claim against Defendants Duma and Frias for their failure to ensure that Plaintiff was receiving a snack bag, Plaintiff would need to allege facts to plausibly suggest that these Defendants knew that their failure would result in a substantial risk of serious harm. The risk of harm offered by Plaintiff is that, on several unspecified occasions, Plaintiff's blood glucose "dropped below safety levels." He does not allege facts that would suggest that either of the named Defendants were aware of these incidents or even that these incidents predated his conversations with the named Defendants. At most, Plaintiff demonstrates that Defendants Duma and Frias were aware that sometimes Plaintiff was not receiving snack bags, which was part of, but, based on Plaintiff's medical records, certainly not the full extent of Plaintiff's treatment for his diabetic condition. Therefore, the factual allegations contained in Plaintiff's complaint are insufficient to state a claim deliberate indifference against Defendants Duma and Frias.

### E.    Eighth Amendment Conditions of Confinement Claims

Plaintiff complains that he was subjected to high temperatures inside his cell and a mice and rat infestation while at RMI. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson*

*v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

As with his Eighth Amendment claims concerning medical care, to state an Eighth Amendment conditions of confinement claim, Plaintiff must allege facts to show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010); *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard again includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837.

First, as to Plaintiff's claim of high temperatures, Plaintiff alleges that his cell was hot, without fans, and the windows remained shut. (Compl., ECF No. 1, PageID.10, 12.) He also claims that he spoke with Defendants Duma, Waber, and Slusher regarding his "asthma and breathing problems." (*Id.*) However, Plaintiff does not provide the Court with any facts that would plausibly suggest that the heat within Plaintiff's cell posed a substantial risk of serious harm to Plaintiff,

much less that any of the named Defendants were subjectively aware of a substantial risk of serious harm. Plaintiff does not describe the temperatures within his cell, any ill effects from the heat, or any details concerning what he told Defendants Duma, Waber, and Slusher about the extent of the heat.

Plaintiff asks the Court to fabricate plausibility to his claim from mere ambiguity; but ambiguity does not support a claim. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-79. Therefore, the Court will dismiss Plaintiff's Eighth Amendment claims concerning the heat within his cell.

Second, Plaintiff only briefly mentions the mice and rat infestation within RMI. Plaintiff does not describe the extent of the infestation or any ill effects from the infestation and does not allege that any of the named Defendants were aware of or responsible for the infestation. Accordingly, like Plaintiff's claims concerning the heat, the Court will dismiss Plaintiff's Eighth Amendment claims based upon a mice and rat infestation for failure to state a claim.

### F.    Claims Against Defendant Gregurek

Plaintiff lists Defendant Gregurek in his list of parties but does not make any factual allegations against this Defendant within his complaint. The records attached to Plaintiff's complaint, however, indicate that Defendant Gregurek responded to and denied Plaintiff's grievance concerning a $5.00 co-pay. (ECF No. 1-1, PageID.111–13.)

It is well-settled that § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Because Plaintiff's complaint alleges only that Defendant

22

Gregurek denied Plaintiff's administrative grievance, his claims against her will be dismissed for failure to state a claim.

### G.     Claims for Violation of MDOC Policy

Throughout his complaint, Plaintiff faults Defendants for not abiding by various MDOC policies and procedures. Such assertions, however, fail to state a constitutional claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state law or prison policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). Additionally, courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney*, 501 F.3d at 581 n.2; *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Accordingly, any claims premised upon violations of MDOC policy and procedure will be dismissed.

### H.     State Law Claims

Plaintiff also brings claims for violation of Michigan state law. In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

Because Plaintiff's federal claims will be dismissed for failure to state a claim, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## IV.    Motion to Appoint Counsel

In his complaint, Plaintiff asks that the Court appoint legal counsel to represent him. (Compl., ECF No. 1, PageID.19.) He states that he is not a legal professional and needs help to apply "standards and legal applications." (*Id.*)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. The Court will therefore deny Plaintiff's request for appointment of counsel.

## <u>Conclusion</u>

Pursuant to Rule 21, the Court determines that Defendants Martino and Stallman will be dropped as misjoined. The Court will direct the Clerk to sever Plaintiff's claims against Defendants Martino and Stallman into two new and separate actions.

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Sprango, Gregurek, Duma, Slusher, Miller, Troost, Frias, Nelson, Evers, Lopez, Waber, and Porta will be dismissed for failure to state

a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss Plaintiff's state law claims against them without prejudice. The Court will also deny Plaintiff's request to appoint legal counsel (Compl., ECF No. 1, PageID.19).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the full $605.00 appellate filing fee pursuant to § 1915(b)(1). *See McGore*, 114 F.3d at 610-11.

An order and judgment consistent with this opinion will be entered.


Dated:   October 7, 2025                          /s/ Robert J. Jonker
                                                  Robert J. Jonker
                                                  United States District Judge

25